IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

SARA ELIZABETH HENSLEY,

   Plaintiff,

v.          Case No.: 3:21-cv-00178

KILOLO KIJAKAZI,
**Acting Commissioner of the**
**Social Security Administration,**

   Defendant.

PROPOSED FINDINGS AND RECOMMENDATIONS

This action seeks a review of the decision of the Commissioner of the Social Security Administration (hereinafter "Commissioner") denying Plaintiff's applications for a period of disability and disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f. The matter is assigned to the Honorable Robert C. Chambers, United States District Judge, and was referred to the undersigned United States Magistrate Judge by standing order for submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending are Plaintiff's Motion for Judgment on the Pleadings and the Commissioner's Brief in Support of Defendant's Decision, requesting judgment in her favor. (ECF Nos. 15, 16, 20).

The undersigned has fully considered the evidence and the arguments of counsel. For the following reasons, the undersigned **RECOMMENDS** that Plaintiff's request for judgment on the pleadings be **DENIED**; the Commissioner's request for judgment on the

pleadings be **GRANTED**; the Commissioner's decision be **AFFIRMED**; and this case be **DISMISSED** and removed from the docket of the Court.

## I.    Procedural History

In 2019, Sara Elizabeth Hensley ("Claimant") protectively filed for DIB and SSI, alleging a disability onset date of June 4, 2017 due to "lumbar spondylosis – back surgery L4-L5 lumbar fusion, degenerative joint disease and stenosis lumbar, rheumatoid arthritis, asthma, obstructive sleep apnea, anxiety, depression, plantar fasciitis, hiatal hernia, gallbladder surgery, vision problems, and skin cancer removal – basal cell." (Tr. at 274-93, 324). The Social Security Administration ("SSA") denied Claimant's applications initially and upon reconsideration. (Tr. at 15). Claimant then filed a request for an administrative hearing, which was held on June 12, 2020 before the Honorable Maria Hodges, Administrative Law Judge (the "ALJ"). (Tr. at 33-55). By written decision dated July 14, 2020, the ALJ found that Claimant was not disabled as defined by the Social Security Act. (Tr. at 12-31). The ALJ's decision became the final decision of the Commissioner on January 20, 2021 when the Appeals Council denied Claimant's request for review. (Tr. 1-6).

Claimant timely filed the present civil action seeking judicial review pursuant to 42 U.S.C. § 405(g). (ECF No. 2). The Commissioner subsequently filed an Answer opposing Claimant's complaint and a Transcript of the Administrative Proceedings. (ECF Nos. 10, 11). Claimant filed a Motion for Judgment on the Pleadings and Brief in Support, and the Commissioner filed a Brief in Support of Defendant's Decision. (ECF Nos. 15, 16, 20). The time period within which Claimant could file a reply to the Commissioner's response expired. Consequently, the matter is fully briefed and ready for resolution.

## II.    <u>Claimant's Background</u>

Claimant was 50 years old on her alleged onset date and 53 years old on the date of the ALJ's decision. (Tr. at 24). She communicates in English, completed two years of college, and previously worked as an outside sales representative and in a composite job of server, trainer, and kitchen helper. (Tr. at 49-50, 323, 325).

## III.    <u>Summary of ALJ's Decision</u>

Under 42 U.S.C. § 423(d)(5), a claimant seeking disability benefits has the burden of proving a disability. *See Blalock v. Richardson,* 483 F.2d 773, 775 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Social Security regulations establish a five-step sequential evaluation process for the adjudication of disability claims. If an individual is found "not disabled" at any step of the process, further inquiry is unnecessary, and benefits are denied. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The first step in the sequence is determining whether a claimant is currently engaged in substantial gainful employment. *Id.* §§ 404.1520(b), 416.920(b). If the claimant is not, then the second step requires a determination of whether the claimant suffers from a severe impairment. *Id.* §§ 404.1520(c), 416.920(c). A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." *Id*. If severe impairment is present, the third inquiry is whether this impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4 (the "Listing"). *Id.* §§ 404.1520(d), 416.920(d). If so, then the claimant is found disabled and awarded benefits.

3

However, if the impairment does not meet or equal a listed impairment, the adjudicator must assess the claimant's residual functional capacity ("RFC"), which is the measure of the claimant's ability to engage in substantial gainful activity despite the limitations of his or her impairments. *Id.* §§ 404.1520(e), 416.920(e). After making this determination, the fourth step is to ascertain whether the claimant's impairments prevent the performance of past relevant work. *Id.* §§ 404.1520(f), 416.920(f). If the impairments do prevent the performance of past relevant work, then the claimant has established a *prima facie* case of disability, and the burden shifts to the Commissioner to demonstrate, in the fifth and final step of the process, that the claimant is able to perform other forms of substantial gainful activity, given the claimant's remaining physical and mental capacities, age, education, and prior work experiences. 20 C.F.R. §§ 404.1520(g), 416.920(g); *see also McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983). The Commissioner must establish two things: (1) that the claimant, considering his or her age, education, skills, work experience, and physical shortcomings has the capacity to perform an alternative job, and (2) that this specific job exists in significant numbers in the national economy. *McLamore v. Weinberger*, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the SSA "must follow a special technique at each level in the administrative review process," including the review performed by the ALJ. 20 C.F.R. §§ 404.1520a(a), 416.920a(a). Under this technique, the ALJ first evaluates the claimant's pertinent signs, symptoms, and laboratory results to determine whether the claimant has a medically determinable mental impairment. *Id.* §§ 404.1520a(b), 416.920a(b). If an impairment exists, the ALJ documents his findings. Second, the ALJ rates and documents the degree of functional limitation resulting from the impairment according to criteria specified in 20 C.F.R. §§ 404.1520a(c), 416.920a(c).

4

Third, after rating the degree of functional limitation from the claimant's impairment(s), the ALJ determines the severity of the limitation. *Id.* §§ 404.1520a(d), 416.920a(d). A rating of "none" or "mild" in the four functional areas of understanding, remembering, or applying information; (2) interacting with others; (3) maintaining concentration, persistence, or pace; and (4) adapting or managing oneself will result in a finding that the impairment is not severe unless the evidence indicates that there is more than minimal limitation in the claimant's ability to do basic work activities. *Id.* §§ 404.1520a(d)(1), 416.920a(d)(1). Fourth, if the claimant's impairment is deemed severe, the ALJ compares the medical findings about the severe impairment and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment meets or is equal to a listed mental disorder. *Id.* §§ 404.1520a(d)(2), 416.920a(d)(2). Finally, if the ALJ finds that the claimant has a severe mental impairment, which neither meets nor equals a listed mental disorder, the ALJ assesses the claimant's residual mental functional capacity. *Id.* §§ 404.1520a(d)(3), 416.920a(d)(3). The regulations further specify how the findings and conclusion reached in applying the technique must be documented by the ALJ, stating:

> The decision must show the significant history, including examination and laboratory findings, the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

20 C.F.R. §§ 404.1520a(e)(4), 416.920a(e)(4).

Here, the ALJ determined as a preliminary matter that Claimant met the insured status for disability insurance benefits through December 31, 2022. (Tr. at 17, Finding No. 1). At the first step of the sequential evaluation, the ALJ confirmed that Claimant had not engaged in substantial gainful activity since June 4, 2017, the alleged disability onset date.

(Tr. at 17-18, Finding No. 2). At the second step of the evaluation, the ALJ found that Claimant had the following severe impairments: degenerative disc disease and asthma. (Tr. at 18, Finding No. 3). The ALJ also considered Claimant's depression, but found that the impairment was non-severe. (Tr. at 18-19).

Under the third inquiry, the ALJ concluded that Claimant did not have an impairment or combination of impairments that met or medically equaled any of the impairments contained in the Listing. (Tr. at 19-20, Finding No. 4). Accordingly, the ALJ determined that Claimant possessed:

> [T]he residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant can stand/walk for 30 minutes and then sit for 10 minutes before returning to standing/walking. She can occasionally climb, frequently balance, stoop, kneel, crouch, and occasionally crawl. The claimant should avoid concentrated exposure to extreme cold, vibrations, pulmonary irritants, and hazards of moving machinery and unprotected heights.

(Tr. at 20-23, Finding No. 5).

At the fourth step, the ALJ determined that Claimant could perform her past relevant work as an outside sales representative as the job is generally performed. (Tr. at 23, Finding No. 6). In addition, the ALJ reviewed Claimant's prior work experience, age, and education in combination with her RFC to determine her ability to engage in other substantial gainful activity. (Tr. at 23-24). The ALJ considered that Claimant (1) was born in 1966 and was defined as an individual closely approaching advanced age on her alleged disability onset date; (2) had at least a high school education; and (3) had no transferable job skills. (Tr. at 24). Taking into account these factors, Claimant's RFC, and the testimony of a vocational expert ("VE"), the ALJ determined that Claimant could perform other jobs that existed in significant numbers in the national economy, including work as a price marker, package labeler, and routing clerk. (*Id.*). Consequently, the ALJ concluded

that Claimant was not disabled as defined by the Social Security Act and was not entitled to benefits. (Tr. at 24, Finding No. 7).

## IV.    **Claimant's Challenges to the Commissioner's Decision**

Claimant asserts three challenges to the Commissioner's decision. She contends that the ALJ erred in concluding that some of her impairments were non-severe, failed to develop the evidence concerning her impairments, and did not consider whether her combination of impairments satisfied the Listing. (ECF No. 16 at 5-21). In response, the Commissioner argues that substantial evidence supports the ALJ's decision. (ECF No. 20 at 14-23).

## V.    **Relevant Evidence**

The undersigned reviewed all of the evidence before the Court. The information that is most pertinent to Claimant's challenges is summarized as follows:

### A. *Treatment Records*

Claimant's family care physician, James E. Rollins, M.D., performed a wellness checkup of Claimant on April 3, 2017. (Tr. at 555). Claimant complained of occasional back pain with radiculopathy. (*Id*.). On examination, Claimant's lower back was tender to palpation, her straight leg raising test was positive on the left, she had mild to moderate lower left quadrant abdominal pain, her right patellar reflex was 1+, and her Achilles reflexes were diminished bilaterally. (Tr. at 557). However, Claimant was alert, oriented, and in no acute distress; her lungs were clear to auscultation without wheezing or rales; her abdomen was soft without masses; and she was coherent with appropriate mood and affect. (*Id*.). Dr. Rollins diagnosed Claimant with low back pain and nicotine dependence. (Tr. at 558). He ordered a lumbar x-ray, which was performed on April 6, 2017 and showed mild degenerative changes with no acute abnormalities. (Tr. at 554, 558). Dr.

Rollins also ordered a lumbar MRI. The MRI, which was taken on April 14, 2017, showed multilevel degenerative changes, including a disc bulge and stenosis that was most severe at L4-5, but Claimant's cord signal was normal. (Tr. at 620).

On May 7, 2017, Claimant participated in a CPAP titration study to evaluate her obstructive sleep apnea syndrome. (Tr. at 543). She was prescribed a CPAP and encouraged to lose weight. (Tr. at 544). Dr. Rollins referred Claimant to neurosurgeon Matthew Werthammer, M.D., who examined her on May 8, 2017. (Tr. at 503). Claimant explained to Dr. Werthammer that she "developed back pain around Thanksgiving," and her mother previously benefitted from lumbar fusion surgery that he performed. (Tr. at 503). Claimant ambulated with a slight antiflexed posture, but she maintained full spinal range of motion; no paraspinal muscle spasm, point tenderness, bony step offs, ankle clonus, or Hoffman's sign; 5/5 strength in all extremities; normal muscle bulk and tone, as well as deep tendon reflexes; intact sensation; and negative straight leg raising and hip rotation tests bilaterally. (Tr. at 504-05). Dr. Werthammer also recorded that Claimant's concentration and memory were intact. (Tr. at 504). He diagnosed Claimant with lumbar spondylosis and prescribed physical therapy, noting that Claimant had severe degenerative disease at L5-S1 with degenerative end plate changes, disc desiccation, central disc herniation producing severe stenosis, and marked facet arthropathy. (Tr. at 505). Claimant stated that she wanted to have an operation if she failed to improve. (*Id.*). Dr. Werthammer explained the risks and benefits of surgery. (*Id.*).

Dr. Rollins administered lumbar injections on May 16, 2017. (Tr. at 538). He also performed a pulmonary function test on May 31, 2017 to evaluate Claimant's reported shortness of breath, but the results were normal. (Tr. at 518). Claimant's chest x-ray on June 5, 2017 due to asthma did not reflect any acute cardiopulmonary process (Tr. at 509-

8

10). On June 7, 2017, Claimant underwent a L4-5 fusion to treat her back pain and radiculopathy. (Tr. at 495). During follow up on July 13 and August 14, 2017, Claimant's incision was healed with no sign of infection, and she demonstrated 5/5 strength in her lower extremities, normal gait, erect posture, and intact sensation to light touch. (Tr. at 495, 497). Claimant's lumbar x-ray reflected stable and appropriate positioning of hardware. (*Id.*). Claimant stated that surgery significantly improved her radiculopathy, but she still had muscle spasms for which she took Tizanidine, which was helpful, and she was referred to physical therapy. (Tr. at 495).

On October 19, 2017, Claimant was "doing well" and maintaining full cervical and lumbar range of motion; no paraspinal muscle spasm, point tenderness, or bony step-offs; 5/5 muscle strength in all of her extremities; intact sensation to light touch; normal gait and reflexes; erect posture; and negative straight leg raising and hip rotation tests bilaterally. (Tr. at 606). Claimant was advised to continue physical therapy. (*Id.*). Mentally, Claimant spoke fluently; was awake, alert, oriented in all spheres; followed commands briskly; and had intact memory. (*Id.*).

Claimant presented to the emergency department at Our Lady of Bellefonte Hospital on November 8, 2017, complaining of mild abdominal pain for the past two weeks. (Tr. at 645). Her musculoskeletal, neurological, respiratory, and psychiatric examinations were normal. (Tr. at 647). Claimant was diagnosed with epigastric abdominal pain and a hepatic cyst. (Tr. at 643). Her subsequent endoscopy on November 15, 2017 indicated a hiatal hernia. (Tr. at 635). Claimant followed up with Dr. Rollins on December 18, 2017. She advised him that back surgery helped her sciatica, but she occasionally felt tingling down her left leg, and she believed that her lower back was worse since surgery. (Tr. at 468). Claimant's reflexes were 2+ on the left and 1+ on the right. (Tr.

9

at 471). Her abdomen was soft, but she expressed tenderness to palpation of the right upper quadrant. (*Id.*). Claimant demonstrated appropriate affect and mood and was conversationally coherent. (*Id.*). Dr. Rollins diagnosed Claimant with lumbar spondylosis and abdominal pain. (*Id.*). He opined that Claimant could not return to work as a traveling sales agent at that time as she continued to rehabilitate because she could not lift 45 pounds and drive as much as her job required. (*Id.*). Dr. Rollins prescribed Ultram and Flexeril. (*Id.*).

On March 7, 2018, Claimant presented to podiatrist David Wood, D.P.M., complaining of right heel pain for the past six weeks and left heel pain for the past two weeks. (Tr. at 786). Claimant reported that it was "like walking on gravel," noting that she worked on her feet for 12 hours per day three days per week. (*Id.*). On examination, Claimant had normal pulses and sensation. (*Id.*). Dr. Wood diagnosed Claimant with plantar fasciitis that was worse on the right. (*Id.*). He prescribed a walking boot for her right foot and a Medrol dosepak with no refills. (*Id.*). Claimant was scheduled to follow up with Dr. Wood in three weeks, but she did not return. (*Id.*).

Dr. Rollins recorded entirely normal examination findings on January 4, 2019, other than slightly reduced Achilles reflex on the right, including normal cardiovascular, respiratory, abdominal, and psychiatric findings. (Tr. at 749). Claimant advised Dr. Rollins that her plantar fasciitis resolved after six months, she was seeing a dermatologist regarding potential skin cancer, and she had back pain every day. (Tr. at 746). Claimant claimed to be in a "bout" of depression for a few months and was "either cleaning a lot or sitting in a blank stare." (*Id.*). However, she was still enjoying and participating in life and she had no concentration deficits, manic fluctuations, or suicidal ideation. (*Id.*). Dr. Rollins prescribed medications, ordered a lumbar x-ray, and referred Claimant to physical

therapy. (Tr. at 749). The lumbar x-ray taken on January 15, 2019 showed no acute findings. (Tr. at 745).

Claimant transferred care to family medicine physician Matthew Curry, M.D., on January 21, 2019. Dr. Curry recorded normal pulmonary, cardiovascular, abdominal, musculoskeletal, and psychiatric examination findings, which included that Claimant did not demonstrate increased respiratory effort or signs of respiratory distress; her abdomen was non-tender with no hepatomegaly; she was oriented in all spheres; and her gait, mood, affect, joints, bones, and muscles were all normal. (Tr. at 739-40). Dr. Curry diagnosed Claimant with lumbar spondylosis, lumbar spinal stenosis without neurogenic claudication, suspected obstructive sleep apnea, and basal cell carcinoma on her upper right shoulder. (Tr. at 740-41). Claimant's back pain was improved on her current regimen, and Dr. Curry renewed her prescriptions for Flexeril, meloxicam, and amitriptyline and additionally prescribed the muscle relaxant cyclobenzaprine for Claimant to take as needed. (Tr. at 741). He encouraged Claimant to use her CPAP machine and follow up with dermatology. (*Id.*).

On April 8, 2019, Claimant told Dr. Curry that she was getting divorced and dealing with anxiety, depression, and panic attacks in addition to her back pain. (Tr. at 731). Her examination findings were normal other than abnormal mood and affect. (Tr. at 734). Dr. Curry diagnosed Claimant with lumbar spinal stenosis without neurogenic claudication and moderate episode of recurrent major depressive disorder. (Tr. at 735). He renewed Claimant's prescription for meloxicam and prescribed Effexor. (*Id.*).

Claimant advised Dr. Curry on June 14, 2019 that her mood improved with medications. (Tr. at 726). She was still in the divorce process and reported pain in multiple places that she thought might be fibromyalgia. (*Id.*). However, Claimant's

physical examination findings were entirely unremarkable, including normal gait and respiratory effort. (Tr. at 729). Her mood and affect were abnormal, and she was continued on Effexor. (*Id.*). Family medicine physician Mary Marcuzzi, M.D., likewise recorded normal physical examination findings on August 13, 2019, including normal gait and station. (Tr. at 771). Claimant was diagnosed with urinary tract infection symptoms and back pain and given an injection in her back. (Tr. at 772). When Claimant followed up with Dr. Curry on October 7, 2019, she reported numbness, tingling, and weak grip in her left hand and left hip pain without weakness in her lower extremity. (Tr. at 762). Claimant also stated that Effexor initially helped her, but it became less effective. (*Id.*). Limping was noted on Claimant's review of systems, but she demonstrated normal gait and station on examination; she did not show increased respiratory effort or signs of respiratory distress; and her lungs were clear to auscultation. (Tr. at 762, 765). Claimant had positive Tinel's/Phalen's signs in her left wrist but intact range of motion and grip strength of 5/5 with no atrophy or deformity. (Tr. at 765). Claimant's lower extremity strength was 5/5 bilaterally, although she had a positive straight leg test. (*Id.*). She was oriented in all spheres but displayed concerned and frustrated mood and affect. (*Id.*). Dr. Curry diagnosed Claimant with moderate episode of recurrent major depressive disorder, left side sciatica, and left carpal tunnel syndrome. (*Id.*). He prescribed medications, including a burst of steroids, and recommended a nighttime carpal tunnel brace. (Tr. at 766).

Claimant advised Dr. Curry on November 1, 2019 that she bought a carpal tunnel brace as he advised and wore it at night with some benefit, but she still had symptoms and felt some weakness in her hand. (Tr. at 757). Claimant reported improvement with Cymbalta and was feeling livelier with an overall reduction in her pain. (*Id.*). Her

examination findings were all normal, including normal gait, station, respiratory effort, orientation, mood, and affect. (Tr. at 760). On March 2, 2020, Claimant complained of back pain to Dr. Curry and said that she was applying for disability. (Tr. at 792). She looked uncomfortable and was bending over the examination table. (*Id.*). However, Claimant's physical examination findings were normal other than right sided paraspinal lumbar muscle tenderness and decreased sensation to light touch of her lateral right lower extremity. (Tr. at 795). There were no pulmonary, cardiovascular, or abdominal abnormalities, and she had normal gait, station, and range of motion in her hips, knees, and ankles; normal reflexes; and no spinal point tenderness. (*Id.*). Claimant's mood and affect were concerned and anxious, but she was oriented in all spheres. (Tr. at 796). Dr. Curry ordered an MRI, referred Claimant for injections, prescribed non-steroidal anti-inflammatory drugs and steroids, and considered re-referring Claimant to neurosurgery. (Tr. at 797). Claimant's lumbar x-ray on March 16, 2020 showed no acute process, stable hardware, and no evidence of instability. (Tr. at 802).

Claimant presented to pain management physician Mack Arroliga, M.D., on March 23, 2020. She complained of tenderness and pain to palpation of her lumbar spine and subjective paresthesia at the L4-5 nerve distribution, but she had 4/5 muscle strength in her right lower extremity and 5/5 strength in her left lower extremity and was neurologically intact, stood and walked unassisted, and only reported leg pain during the right sitting straight leg raising test. (Tr. at 815). She appeared alert, oriented, and in no acute distress. (*Id.*). Dr. Arroliga diagnosed Claimant with post-laminectomy syndrome for which he recommended injections and possibly a spinal cord stimulator in the future. (*Id.*). Claimant received a lumbar epidural steroid injection on May 14, 2020. (Tr. at 817). She complained, during follow up on May 21, 2020, that her pain returned in less than 48

hours after the injection, and she was scheduled for a sacroiliac joint injection. (Tr. at 824-25).

### B. Evaluations, Opinions, and Prior Administrative Findings

On May 8, 2017, Dr. Werthammer wrote a work/school excuse stating that Claimant would be temporarily totally disabled from June 7, 2017 until an estimated date of September 21, 2017 while recuperating from surgery. (Tr. at 431). On April 18, 2019, psychologist Emily Wilson, M.A., performed a consultative mental status examination of Claimant. The only abnormal finding was Claimant's below average concentration based on the Digit Span subtest of the WAIS-IV. (Tr. at 710). All of Claimant's other mental status findings were normal, including Claimant's attitude/behavior, social interaction, speech, orientation, mood, affect, thought processes and content, perceptions, insight, judgment, memory, psychomotor behavior, persistence, and pace. (*Id.*). State agency psychologists Debra Lilly, Ph.D., and Jeff Boggess, Ph.D., concluded on April 27 and September 19, 2019, respectively, that Claimant had mild limitations in all paragraph B criteria and did not have any severe mental impairments. (Tr. at 63, 64, 78, 79, 95-96, 109-10).

Stephen Nutter, M.D., performed an internal medicine examination of Claimant on May 7, 2019. Claimant demonstrated normal gait that was not lurching, unsteady, or unpredictable; she was stable at station and sitting, but appeared uncomfortable in the supine position; and her respiratory, cardiovascular, and abdominal findings were normal. (Tr. at 717-18). Claimant complained of tenderness in her right foot and lumbar spine and pain with lumbar range of motion testing, as well as back pain with straight leg raising in the supine position. (Tr. at 719). She had some difficulty getting out of the supine position, reported heel pain while standing on her right leg, had some difficulty

14

balancing on her left leg, and complained of back and left buttock pain during range of motion testing in her hips. (*Id.*). Claimant had 5/5 muscle strength in all extremities, except her knee strength and toe extensor were 3/5; no atrophy; well preserved sensation; and no clonus. (*Id.*). Her reflexes were difficult to elicit with distraction; she could walk on her toes, but not her heels due to right heel pain; and she could perform tandem gait, but was unable to squat due to back and left hip pain. (*Id.*). Claimant's lumbar x-ray showed uncomplicated L4-5 fusion and multilevel degenerative changes below the fusion, including at L3-4 and L5-S1. (Tr. at 721). Her pulmonary function study showed very mild restrictive disease. (Tr. at 722). Dr. Nutter diagnosed Claimant with chronic dorsolumbar strain. (Tr. at 718-19).

State agency physician Rabah Boukhemis, M.D., concluded on May 29, 2019, based upon his review of Claimant's records, that Claimant's only severe physical impairment was "DDD (Disorders of back – Discogenic and Degenerative)." (Tr. at 63, 78). He assessed that Claimant could perform a range of light work that included occasional climbing and crawling; frequent balancing, stooping, kneeling, and crouching; and no concentrated exposure to extreme cold, vibration, fumes, or hazards. (Tr. at 65-67, 80-82). Palle Reddy, M.D., affirmed Dr. Boukhemis's RFC assessment on September 16, 2019. (Tr. at 97-99, 111-13). He found that Claimant had an additional severe physical impairment of asthma. (Tr. at 95, 109).

On March 2, 2020, Dr. Curry completed an RFC form, stating that Claimant could occasionally and frequently lift/carry less than ten pounds, stand and/or walk for less than two hours, and sit for less than two hours in an eight-hour workday. (Tr. at 789). He also opined that Claimant had limited ability to push and pull with her lower extremities. (*Id.*).

### C. Claimant's Testimony

Claimant testified during her administrative hearing on June 12, 2020 that she previously worked as a traveling sales representative for Brown's Food Service and a server trainer for Texas Roadhouse. (Tr. at 39). Claimant alleged that she could no longer work because she was in pain "24/7," which she described as a "dull ache" that radiated down her right side. (Tr. at 40). Claimant also expressed that her hands were swollen from rheumatoid arthritis, and she did not sleep well, had trouble standing, and could not "lift anything" or walk or ride in the car for long periods of time. (*Id.*). She testified that she could only walk three feet before needing to rest, stand for 15 minutes, sit for 30 to 40 minutes before changing positions, and lift eight pounds "at the most." (Tr. at 41). Claimant stated that the lumbar epidural injection did not help, but she only received the first injection of the series so far. (*Id.*). In a typical day, Claimant ate; watched the news; sat outside and read the newspaper; let her dogs out; did light housework, such as dusting or folding clothes; and sometimes read, did puzzles, and watched television. (Tr. at 42). She was able to sit and read or work on a puzzle for 15 to 20 minutes while her dogs were outside. (*Id.*).

## VI.   Standard of Review

The issue before the Court is whether the final decision of the Commissioner is based upon an appropriate application of the law and is supported by substantial evidence. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). In *Blalock v. Richardson*, the Fourth Circuit Court of Appeals defined "substantial evidence" to be:

> [E]vidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

*Blalock*, 483 F.2d at 776 (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). This Court is not charged with conducting a *de novo* review of the evidence. Instead, the Court's function is to scrutinize the record and determine whether it is adequate to support the conclusion of the Commissioner. *Hays*, 907 F.2d at 1456. When conducting this review, the Court does not re-weigh evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 2001) (citing *Hays*, 907 F.2d at 1456)). Moreover, "[t]he fact that the record as a whole might support an inconsistent conclusion is immaterial, for the language of § 205(g) ... requires that the court uphold the [Commissioner's] decision even should the court disagree with such decision as long as it is supported by 'substantial evidence.'" *Blalock*, 483 F.2d at 775 (citations omitted). Thus, the relevant question for the Court is "not whether the claimant is disabled, but whether the ALJ's finding of no disability is supported by substantial evidence." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (citing *Craig*, 76 F.3d at 589).

## VII. <u>Discussion</u>

Claimant argues that the Commissioner's decision is unsupported by substantial evidence because the ALJ failed to find that some of her impairments were severe, did not properly develop the record, and ignored the RFC opinion from her primary care provider. Each argument is considered below, in turn.

### A. *Non-Severe Impairments*

At the second step of the sequential evaluation, the ALJ determines whether a claimant has medically determinable impairments, and, if so, whether such impairments are severe within the meaning of the regulations. 20 C.F.R. §§ 404.1520(a)(4)(ii),

416.920(a)(4)(ii). A medically determinable impairment "must be established by objective medical evidence from an acceptable medical source," and the SSA "will not use [a claimant's] statement of symptoms, a diagnosis, or a medical opinion to establish the existence of an impairment(s)." *Id.* at §§ 404.1521, 416.921.

As section DI 24501.020 of the SSA's Program Operations Manual System (POMS) explains, "[o]bjective medical evidence means signs, laboratory findings, or both." The term "signs" is defined as "one or more anatomical, physiological, or psychological abnormalities that are observable, apart from the claimant's statements (description of symptoms)," and the "[s]igns must be shown by medically acceptable clinical diagnostic techniques." POMS DI 24501.020. "Laboratory findings" are defined as "one or more anatomical, physiological, or psychological phenomena that can be shown by the use of medically acceptable laboratory diagnostic techniques." *Id.* Finally, "[d]iagnostic techniques include chemical tests (such as blood tests), electrophysiological studies (such as electrocardiograms and electroencephalograms), medical imaging (such as X-rays), and psychological tests." *Id.*

A medically determinable impairment is considered "severe" if it significantly limits a claimant's ability to do work-related activities. 20 C.F.R. §§ 404.1522(a), 416.922(a); SSR 96-3p, 1996 WL 374181, at *1. "[A]n impairment(s) that is 'not severe' must be a slight abnormality (or a combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities." SSR 96-3p, 1996 WL 374181, at *1 (citing SSR 85-28, 1985 WL 56856). Basic work activities include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) using judgment; (5) responding

appropriately to supervision, co-workers and usual work situations; and (6) dealing with changes in a routine work setting. 20 C.F.R. §§ 404.1522(b), 416.922(b).

The claimant bears the burden of proving that an impairment is severe, *Grant v. Schweiker,* 699 F.2d 189, 191 (4th Cir. 1983), and does this by producing medical evidence establishing the condition and its effect on the claimant's ability to work. *Williamson v. Barnhart,* 350 F.3d 1097, 1100 (10th Cir. 2003). The mere presence of a condition or ailment is not enough to demonstrate the existence of a severe impairment. Moreover, to qualify as a severe impairment at step two, the impairment must have lasted, or be expected to last, for a continuous period of at least twelve months and must not be controlled by treatment, such as medication. *Gross v. Heckler,* 785 F.2d 1163, 1166 (4th Cir. 1986); 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1509. If the ALJ determines that the claimant does not have a severe impairment or combination of impairments, a finding of not disabled is made at step two, and the sequential process comes to an end. On the other hand, if the claimant has at least one impairment that is deemed severe, the process moves on to the third step.

"[T]he step-two inquiry is a de minimis screening device to dispose of groundless claims." *Smolen v. Chater,* 80 F.3d 1273, 1290 (9th Cir. 1996) (citing *Bowen v. Yuckert,* 482 U.S. 137, 153-54 (1987)); *see also Felton–Miller v. Astrue,* 459 F. App'x 226, 230 (4th Cir. 2011) ("Step two of the sequential evaluation is a threshold question with a de minimis severity requirement."). Courts often conclude that an error at step two is harmless when the ALJ found at least one severe impairment, proceeded with the sequential evaluation, and considered the effect of the challenged impairment(s) at subsequent steps of the analysis. *Cook v. Colvin*, No. 2:15-CV-07181, 2016 WL 5661348, at *9 (S.D.W. Va. Sept. 29, 2016) (collecting cases).

### 1. Musculoskeletal impairments

Claimant indicates that the ALJ should have classified the following musculoskeletal conditions as severe impairments: rheumatoid arthritis, plantar fasciitis, left hip and knee pain, chronic inflammation, lumbar spondylosis, lumbar sacroiliac joint dysfunction, chronic lumbar pain syndrome, multiple lumbar disc protrusions and extrusions, and post laminectomy syndrome. (ECF No. 16 at 6). In this case, the ALJ concluded that Claimant's degenerative disc disease was a severe impairment. (Tr. at 18). In the RFC evaluation, the ALJ noted that Claimant alleged disability due to lumbar spondylosis, lumbar fusion, degenerative joint disease, lumbar stenosis, rheumatoid arthritis, and plantar fasciitis, among other conditions. (Tr. at 20). The ALJ cited Claimant's complaints of constant pain radiating down her right side into her leg; swollen hands; and limited ability to lift, stand, and sit. (Tr. at 21). The ALJ also considered Claimant's daily activities, lumbar fusion surgery, x-rays and MRI, physical examination findings, treatment modalities, and the opinion evidence. (Tr. at 21-23). Ultimately, the ALJ explained that despite Claimant's degenerative disc disease she maintained normal gait, 5/5 strength, and intact sensation. (Tr. at 23). In addition, the ALJ noted that Claimant was treated conservatively with medication, physical therapy, and injections after her June 2017 lumbar fusion and subsequent x-rays showed uncomplicated stable hardware. (*Id*.). Furthermore, the ALJ discussed that Claimant performed many activities independently, such as personal care, driving a vehicle, and doing some housework. (*Id*.). After considering all of the evidence, the ALJ concluded that Claimant could perform light exertional work in which she could stand/walk for 30 minutes and sit for 10 minutes before returning to standing/walking; frequently perform postural activities except for occasional climbing or crawling; and have no concentrated exposure to environmental

conditions, such as extreme cold, vibration, pulmonary irritants, and hazards of moving machinery and unprotected heights. (Tr. at 20, 23).

Notably, many of the conditions that Claimant contends should have been deemed severe relate to Claimant's degenerative disc disease, which the ALJ found was a severe impairment. In addition, the ALJ's determination that Claimant's only severe musculoskeletal impairment was degenerative disc disease corresponded to the findings of Dr. Boukhemis and Dr. Reddy. (Tr. at 63, 78, 95, 109). The ALJ evaluated the prior administrative findings and found them persuasive on the basis that they were supported by the MRI findings and surgery notes and consistent with the longitudinal record of examinations and objective evidence. (Tr. at 22). The prior administrative findings offer more than a scintilla of evidence to support the ALJ's step two finding regarding Claimant's musculoskeletal impairments.

Claimant asserts that the other musculoskeletal impairments, which she listed in her brief, were severe simply because they were diagnosed by her physicians for more than a 12-month period. (ECF No. 16 at 6). Claimant's plantar fasciitis, for example, explicitly resolved after six months according to her medical records. (Tr. at 746). However, even assuming *arguendo* that Claimant is correct that she was diagnosed with certain conditions for over 12 months, a diagnosis or Claimant's subjective allegations do not prove that an impairment is severe. Rather, Claimant must submit evidence that the impairment had more than a minimal effect on her ability to perform basic work activities. The functional effects of the impairments, not the diagnosis, guide the analysis. In this case, Claimant lists diagnoses and complaints, but she does not articulate how the evidence proves that her impairments were severe. While Claimant disagrees with the ALJ's step two finding, she does not offer any evidence to undermine the ALJ's conclusion

21

that degenerative disc disease was her only severe physical impairment.

Moreover, to any extent that the ALJ should have assessed that Claimant's other musculoskeletal impairments were severe, such errors were harmless because the ALJ clearly considered Claimant's musculoskeletal functions in the RFC analysis. As shown above, the ALJ considered the relevant evidence and performed a cogent, well supported assessment of Claimant's physical abilities, including her capacity to walk, stand, sit, and lift. Therefore, because the ALJ proceeded with the evaluation and considered the functional effects of Claimant's musculoskeletal impairments, the ALJ's alleged errors at step two do not justify remand of the decision.

### 2. Breathing impairments

Claimant also indicates that the ALJ should have found that her obstructive sleep apnea was a severe impairment. (ECF No. 16 at 6). Although the ALJ did not explicitly discuss sleep apnea at step two, she found that Claimant's asthma was severe. (Tr. at 18). In the RFC analysis, the ALJ considered Claimant's normal pulmonary function test in May 2017 and subsequent pulmonary function test in May 2019, which indicated very mild restrictive pulmonary disease. (Tr. at 21); *see* (Tr. at 518, 722). The ALJ further cited that Claimant's breathing was normal during examinations in November 2017 and January, April, May, and June 2019. (Tr. at 21-22); *see* (Tr. at 647, 718, 729, 734, 749). Based on the evidence, the ALJ restricted Claimant's RFC to a range of light work that allowed her to sit for 10 minutes after standing/walking for 30 minutes, perform limited postural activities, and have no concentrated exposure to pulmonary irritants. (Tr. at 20).

The ALJ's step two finding, which does not assess sleep apnea as a severe impairment, is congruent with the prior administrative findings. Dr. Boukhemis did not assess any severe respiratory impairments, and Dr. Reddy found that Claimant's only

respiratory impairment was asthma. (Tr. at 63, 78, 95, 105). The ALJ found Dr. Reddy's assessment persuasive, which provides substantial support for the ALJ's determination. (Tr. at 22). Furthermore, Claimant's reliance on her diagnosis and allegations to support her argument that her sleep apnea is a severe impairment is unavailing. (ECF No. 16 at 8, 9, 11, 12, 14). Claimant does not identify objective evidence that her sleep apnea had more than a minimal effect on her ability to do basic work activities. Furthermore, the ALJ proceeded with the sequential evaluation and considered any potential effects of sleep apnea in the RFC analysis. Regarding fatigue and any mental effects of sleep apnea, the ALJ evaluated Claimant's ability to concentrate, memory, behavior, other mental status examination findings, and activities of daily living. (Tr. at 18). In addition, as discussed above, the ALJ thoroughly examined Claimant's physical abilities and included exertional, postural, and environmental restrictions in Claimant's RFC. Claimant does not challenge the ALJ's RFC finding or offer evidence that further RFC restrictions were warranted based on her sleep apnea. For those reasons, if the ALJ erred in not finding that Claimant's obstructive sleep apnea was a severe impairment, it did not reasonably affect the outcome of the decision.

### 3. Mental impairments

Claimant next argues that the ALJ should have found that her anxiety and depression were severe impairments. (ECF No. 16 at 6). The ALJ considered at step two that Claimant was diagnosed with depression and prescribed medication by her primary care provider. (Tr. at 18). However, the ALJ noted that Claimant's mental status examinations reflected normal attention span, concentration, mood, behavior, speech, judgment, thought processes and content, pace, and persistence; intact memory; and appropriate affect. (*Id*.). The ALJ also found that Claimant's mental impairments did not

appear to have a great impact on her activities of daily living, which were more affected by her physical impairments. (*Id.*). The ALJ cited that Claimant could perform personal hygiene independently without reminders, had no difficulty following instructions, could pay attention and finish what she started, go out in public, drive, manage money, and socialize. (*Id.*). Applying the special technique to assess Claimant's mental impairments, the ALJ concluded that Claimant had mild functional limitations in the paragraph B criteria, and her impairments were non-severe. (*Id.*).

This assessment, too, reflects the prior administrative medical findings, which the ALJ found persuasive. Dr. Lilly and Dr. Boggess concluded in April and September 2019, respectively, that Claimant had mild limitations in all paragraph B criteria and did not have any severe mental impairments. (Tr. at 63-64, 78-79, 95-96, 109-10). The ALJ concluded that Dr. Lilly and Dr. Boggess's findings were persuasive because they were consistent with Claimant's limited treatment and benign examination findings, including normal mood, thought processes and content, judgment, memory, pace, persistence, speech, and behavior. (Tr. at 18). The prior administrative findings provide substantial support for the ALJ's step two determination that Claimant's mental impairments were non-severe.

In addition, Claimant's medical records and activities of daily living offer more than a scintilla of support for the ALJ's step two finding. Claimant's primary care physician sometimes recorded Claimant's abnormal mood and affect, such as when Claimant was getting a divorce in April 2019. (Tr. at 731, 734, 765, 796). He prescribed medication, which improved Claimant's symptoms. (Tr. at 726, 757). During her consultative examination in April 2019, all of Claimant's mental status findings were normal except for her below average concentration, which was based only on the Digit

Span subtest of the WAIS-IV administered during the examination. (Tr. at 710). The vast majority of Claimant's psychiatric findings in the record were unremarkable. Claimant was routinely awake, alert, coherent, and oriented in all spheres; spoke fluently; followed commands briskly; and displayed appropriate mood and affect and intact concentration and memory. (Tr. at 471, 504, 557, 606, 647, 710, 740, 760, 749). Furthermore, Claimant watched the news, sat outside and read the newspaper while her dogs were in the yard, performed light housework, read, worked on puzzles, and watched other television programs. (Tr. at 42). For all of those reasons, Claimant fails to establish that the ALJ erred in concluding that her mental impairments did not have more than a minimal effect on her ability to perform basic work activities.

### 4.  Gastrointestinal impairments

Finally, Claimant argues that her hiatal hernia, GERD, and irritable bowel syndrome should have been considered severe impairments. (ECF No. 16 at 6). She cites very little evidence to support that contention. Claimant mentions visits in November and December 2017 during which she was diagnosed with abdominal pain, a November 2018 diagnosis of hiatal hernia, and Dr. Curry's RFC opinion which listed "other diagnosis" of hiatal hernia. (ECF No. 16 at 10-11, 13, 14). Claimant does not point to any evidence that contravenes the ALJ's step two finding. As discussed, in order to qualify as severe an impairment must have more than a minimal effect on Claimant's ability to do basic work activities for a continuous period of at least twelve months, and it must not be controlled by treatment, such as medication. The mere presence of an ailment is not enough to establish a severe impairment.

Claimant reported mild abdominal pain in November 2017 and was diagnosed with a hiatal hernia. (Tr. at 635, 643, 645). She complained of tenderness to palpation in the

right upper quadrant of her abdomen in December 2017 and was diagnosed with abdominal pain. (Tr. at 471). However, the record is otherwise largely unremarkable regarding gastrointestinal complaints or abnormalities. (Tr. at 729, 734, 740, 749, 760, 771, 795). Claimant failed to offer evidence that her gastrointestinal issues qualified as severe impairments or that the ALJ should have included any further RFC restrictions to account for them. For all of the above reasons, the undersigned **FINDS** that the ALJ's step two finding is supported by substantial evidence.

### B. *Duty to Develop the Evidence*

Claimant also asserts that the ALJ failed to fulfill her duty to develop the evidence regarding Claimant's multiple impairments. (ECF No. 16 at 5). An "ALJ has a duty to explore all relevant facts and inquire into the issues necessary for adequate development of the record." *Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986). The ALJ "cannot rely only on the evidence submitted by the claimant when that evidence is inadequate." *Id.* However, an ALJ's duty to develop the record "is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Perry v. Astrue*, No. 3:10-CV-01248, 2011 WL 5006505, at *16 (S.D.W. Va. Oct. 20, 2011) (quoting *Mayes v. Massanari,* 276 F.3d 453, 459–60 (9th Cir. 2001)); *Fuller v. Saul*, No. 3:19-CV-00174, 2020 WL 597596, at *5 (S.D.W. Va. Jan. 13, 2020), *report and recommendation adopted,* 2020 WL 597425 (S.D.W. Va. Feb. 6, 2020); *Savage v. Saul*, No. 3:20-CV-00482, 2021 WL 2168909, at *8 (S.D.W. Va. May 7, 2021), *report and recommendation adopted,* 2021 WL 2169514 (S.D.W. Va. May 27, 2021); *Lewanda Terriel S. v. Saul*, No. CV TMD 19-1146, 2020 WL 2794588, at *4 (D. Md. May 29, 2020).

The ALJ's duty is to ensure that the record contains sufficient evidence upon which the ALJ can make an informed decision. *Ingram v. Commissioner of Social Security*

*Administration,* 496 F.3d 1253, 1269 (11th Cir. 2007); *Weise v. Astrue,* No. 1:08-cv-00271, 2009 WL 3248086 (S.D.W. Va. Sept. 30, 2009); *Jones v. Saul*, No. 1:19-cv-275-GCM, 2020 WL 2411635, at *3 (W.D.N.C. May 12, 2020). Consequently, when examining the record to determine if it was adequate to support a reasoned administrative decision, the Court looks for evidentiary gaps that resulted in "unfairness or clear prejudice" to Claimant. *Marsh v. Harris,* 632 F.2d 296, 300 (4th Cir. 1980).

Ultimately, the claimant must establish a prima facie entitlement to benefits, and he or she consequently bears the risk of nonpersuasion. *Bell v. Chater*, 1995 WL 347142, at *4 (4th Cir. June 9, 1995) (citing *Seacrist v. Weinberger,* 538 F.2d 1054, 1057 (4th Cir. 1976) and 42 U.S.C. § 423(d)(5)(A) ("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Secretary may require.")). Thus, the ALJ is not required to act as a claimant's counsel and can presume that the claimant's counsel presented the strongest case for benefits. *Bell v*, 1995 WL 347142, at *4; *Perry*, 2011 WL 5006505, at *15. The ALJ's duty to develop the record does not permit a claimant, through counsel, to rest on the record and later fault the ALJ for not performing a more exhaustive investigation. *Perry*, 2011 WL 5006505, at *15 (citations and markings omitted).

In this case, Claimant does not identify any gaps in the record or further evidence that the ALJ should have developed. She cites a legal standard and does not articulate how it applies to her case. (ECF No. 16 at 5-6). Claimant's conclusory assertion that the ALJ failed to develop the record does not assert a viable challenge to the Commissioner's decision. *See, e.g., Nelson v. Saul*, No. 3:20-CV-00586, 2021 WL 1603812, at *8 n.3 (S.D.W. Va. Apr. 7, 2021), *report and recommendation adopted*, 2021 WL 1601747 (S.D.W. Va. Apr. 23, 2021) (discussing that a claimant waives a challenge by raising it only

in a conclusory fashion). Indeed, the Court should not be tasked with researching and constructing Claimant's arguments for her. Claimant fails to specify any deficiencies in the record. She mentions the VE's testimony that a person with certain mental limitations cannot perform any jobs. (ECF No. 16 at 18). However, Claimant does not explain how the VE's testimony relates to her challenge that the ALJ should have developed the record and it is unclear how the VE's testimony is relevant in that regard.

In addition, Claimant's brief belies her assertion that the ALJ failed to develop the evidence. As Claimant cited, the record included her medical examinations, hearing testimony, function reports, medical source statements, evaluations, and prior administrative findings. (ECF No. 16 at 6-17, 19-20). Claimant does not identify any further inquiries that the ALJ should have made or indicate what further evidence was necessary for the ALJ to render a decision on her disability applications. Claimant lists pieces of medical evidence in her brief, yet she does not explain how any of it prompted further investigation. (*Id.*). Moreover, Claimant confirmed by counsel at her administrative hearing that she had no objections to the record before the ALJ. (Tr. at 37). Claimant had the opportunity to raise any issues concerning development of the record, but she declined to do so. For those reasons, the undersigned **FINDS** that the record was sufficiently developed for the ALJ to make an informed decision on Claimant's applications for benefits.

### C. *Combination of Impairments*

In her final challenge to the Commissioner's decision, Claimant argues that the ALJ failed to consider whether her combination of impairments satisfied the Listing. (ECF No. 16 at 18-21). A claimant should be found disabled at the third step of the sequential evaluation process when his or her impairments meet or medically equal an

impairment included in the Listing. The Listing describes for each of the major body systems impairments which are considered severe enough to prevent a person from doing any gainful activity. *See* 20 C.F.R. §§ 404.1525, 416.925. The Listing is intended to identify those individuals whose mental or physical impairments are so severe that they would likely be found disabled regardless of their vocational background; consequently, the criteria defining the listed impairments is set at a higher level of severity than that required to meet the statutory definition of disability. *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990). Because disability is presumed with a listed impairment, "[f]or a claimant to show that his impairment matches a [listed impairment], it must meet all of the specified medical criteria." *Id.* at 530. If the claimant is unable to demonstrate that his or her impairments, alone or in combination, match the criteria of a particular listed impairment, the claimant may still establish disability by showing that his or her impairments are medically equivalent to the listed impairment.

To establish medical equivalency, a claimant must present evidence that his or her impairment, unlisted impairment, or combination of impairments, is equal in severity and duration to all of the criteria of a specific listed impairment. *Id.* at 530; *see also* 20 C.F.R. §§ 404.1526, 416.926. In Title 20 C.F.R. §§ 404.1526, 416.926, the SSA sets out three ways in which medical equivalency can be determined. First, if the claimant has an impairment that is described in the Listing, but (1) does not exhibit all of the findings specified in the listing, or (2) exhibits all of the findings, but does not meet the severity level outlined for each and every finding, equivalency can be established if the claimant has other findings related to the impairment that are at least of equal medical significance to the required criteria. *Id.* §§ 404.1526(b)(1), 416.926(b)(1). Second, if the claimant's impairment is not described in the Listing, equivalency can be established by showing

29

that the findings related to the claimant's impairment are at least of equal medical significance to those of a closely analogous listed impairment. *Id.* §§ 404.1526(b)(2), 416.926(b)(2). Finally, if the claimant has a combination of impairments, no one of which meets a listing, equivalency can be proven by comparing the claimant's findings to the most closely analogous listings; if the findings are of at least equal medical significance to the criteria contained in any one of the listings, then the combination of impairments will be considered equivalent to the most similar listing. *Id.* §§ 404.1526(b)(3), 416.926(b)(3).

"For a claimant to qualify for benefits by showing that his unlisted impairment, or combination of impairments is 'equivalent' to a listed impairment, he must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment ... A claimant cannot qualify for benefits under the 'equivalence' step by showing that the overall functional impact of his unlisted impairment or combination of impairments is as severe as that of a listed impairment." *Sullivan,* 493 U.S. at 531. The claimant bears the burden of production and proof at this step of the disability determination process. *Grant*, 699 F.2d at 191.

In this matter, the ALJ concluded that Claimant did not have an impairment or combination of impairments that met or medically equaled the severity of any of the impairments in the Listing. (Tr. at 19). The ALJ specifically considered listing 1.04 regarding disorders of the spine and listing 3.03 regarding asthma. (Tr. at 19-20). Claimant does not develop her step three challenge in any manner, such as identifying errors in the ALJ's analysis of the above listings or asserting any listings that her combination of impairments supposedly satisfied. She asserts that the ALJ overlooked the RFC assessment prepared by her treating provider, Dr. Curry, but she does not explain how that argument is relevant to her challenge that her combination of impairments

30

satisfied the Listing.

Claimant protectively filed her applications for benefits in 2019. Thus, the revised regulations regarding opinion evidence, which apply to claims filed on or after March 27, 2017, govern Claimant's applications. Under the revised regulations, the ALJ must evaluate the persuasiveness of all medical opinions, which are defined as the following:

> [A] statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions in the following abilities: (i) Your ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching); (ii) Your ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting; (iii) Your ability to perform other demands of work, such as seeing, hearing, or using other senses; and (iv) Your ability to adapt to environmental conditions, such as temperature extremes or fumes.

20 C.F.R. §§ 404.1513(a)(2), 404.1520c, 416.913(a)(2), 416.920c.

The regulatory factors that the ALJ must consider when evaluating medical opinions include supportability; consistency; relationship of the source to the claimant; length, purpose, and extent of treatment relationship; frequency of examinations; whether the source examined the claimant; the source's specialization; and other factors. *Id.* at §§ 404.1520c(c), 416.920c(c). The supportability and consistency of the opinions are of primary importance. The ALJ must articulate his or her consideration of the factors of supportability and consistency, but the ALJ is not required to explain how he or she considered the other regulatory factors. *Id.* at §§ 404.1520c(b)(2), 416.920c(b)(2).

The term "supportability" means that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive

the medical opinions or prior administrative medical finding(s) will be." *Id.* at §§ 404.1520c(c)(1), 416.920c(c)(1). Furthermore, the law explains that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s)" are. *Id.* at §§ 404.1520c(c)(2), 416.920c(c)(2).

In this case, the ALJ considered Dr. Curry's RFC assessment that Claimant could perform less than sedentary work, but the ALJ found that it was not persuasive. (Tr. at 22). The ALJ discussed that Dr. Curry's assessment of Claimant's physical abilities was inconsistent with and not supported by the longitudinal record, including objective imaging, pulmonary function testing, and physical examinations documenting 5/5 strength, intact range of motion and sensation, normal gait and breathing, and negative straight leg raising tests. (*Id.*).

The ALJ did not, as Claimant argues, ignore Dr. Curry's medical source statement. Rather, the ALJ very clearly evaluated its persuasiveness, explicitly articulating her analysis of whether it was supported by and consistent with the record, as required by law. Furthermore, Dr. Curry did not render an opinion that Claimant's combination of impairments satisfied the Listing. Therefore, it is unapparent why Claimant specifically focuses on that piece of evidence regarding her step three challenge.

Claimant's conclusory assertion that her multiple impairments "when combined, totally disable her and exceed the combination of impairments listing" fails to assert a specific challenge to the Commissioner's decision. (ECF No. 16 at 20). Claimant effectively waived this challenge by raising it only in a conclusory fashion. S*ee Nelson*, 2021 WL 1603812, at *8 n.3. The ALJ articulated, with specific citations to the record, her findings

that Claimant's impairments did not satisfy the Listing criteria. (Tr. at 19-20). Claimant does not adduce any evidence or argument to dispute the ALJ's analysis. The decision documents the ALJ's well-supported rationale for finding that Claimant's impairments, alone or in combination, did not preclude her from engaging in substantial gainful activity. (*Id.*). To the extent that the ALJ did not elaborate further on the analysis of Claimant's impairments in combination, the undersigned finds further elaboration was unnecessary because the required analysis clearly took place. Therefore, the undersigned **FINDS** that the ALJ complied with her duty under the applicable law to consider Claimant's impairments in combination at step three of the sequential evaluation.

## VIII.  Recommendations for Disposition

Based on the foregoing, the undersigned United States Magistrate Judge respectfully **PROPOSES** that the presiding District Judge confirm and accept the findings herein and **RECOMMENDS** that the District Judge **DENY** Plaintiff's request for judgment on the pleadings, (ECF No. 15); **GRANT** the Commissioner's request for judgment on the pleadings, (ECF No. 20); **AFFIRM** the decision of the Commissioner; **DISMISS** this action, with prejudice, and remove it from the docket of the Court.

The parties are notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable Robert C. Chambers, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and three days (if received by mail) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made, and the basis of

such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Thomas v. Arn*, 474 U.S. 140 (1985); *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing party, Judge Chambers, and Magistrate Judge Eifert.

The Clerk is directed to file this "Proposed Findings and Recommendations" and to provide a copy of the same to counsel of record.

**FILED**:  November 23, 2021

Cheryl A. Eifert
United States Magistrate Judge

34